# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Rene Joseph Carbajal, ) | CV 07-0363 PHX-DGC (JM) |
| Petitioner, ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| Dora B. Schriro, et al., ) | |
| Respondents. ) | |

Pending before the Court is Petitioner Rene Joseph Carbajal's Petition for Writ of Habeas Corpus [Docket No. 1]. In accordance with the Rules of Practice of the United States District Court for the District of Arizona and 28 U.S.C. § 636(b)(1), this matter was referred to the Magistrate Judge for report and recommendation. As explained below, the Magistrate Judge recommends that the District Court, after an independent review of the record, dismiss the Petition with prejudice.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

**A.      Factual Background**

The facts underlying this petition were recited in the Arizona Court of Appeals' July 10, 2003, Memorandum Decision affirming Petitioner's conviction and are as follows:

> [Petitioner] and the victim, Eileen, formed a casual acquaintance at their workplace in Phoenix, where they both were employed as customer service telephone representatives for a cable television company. In chatting, they learned they shared a birth date of June 30 and were "roughly the same age." When [Petitioner] subsequently won a free dinner for two because of his sales prowess, he invited Eileen to go to dinner and an "oldies" concert to celebrate their common birthdays. [Petitioner] knew that Eileen was dating a person called George because she had told him so and because it was "common

knowledge" at work. Therefore, although Eileen agreed to go to dinner and the concert with [Petitioner], she made it clear that she was going with him as "a friend," that it was not a "date" and that she would pay him for her concert ticket.

[Petitioner] and Eileen were to go out on June 23, 2001, the Saturday preceding their actual birthdays, and [Petitioner] was to pick her up at her apartment. On Friday, June 22, [Petitioner] left a message on Eileen's answering machine asking her if he could come by to make sure he knew exactly where she lived so they would not "run late" the following evening. He arrived later that night with a large bottle of wine. Eileen let him in because she had no reason not to trust him at that point. Both [Petitioner] and Eileen testified at trial that they then sat at the kitchen table in her studio apartment for several hours, talked, and drank wine. Their testimony about the remainder of the evening, however, differed considerably.

Eileen maintained that, because she had Hepatitis C, she only drank one glass of wine that evening while [Petitioner] consumed about "six or seven." [Petitioner] then made an advance, which she rebuffed, reminding him that they were "supposed to be just friends." When he then got up and went towards her bed next to the kitchen table, she let him go thinking he may have "had a little too much to drink, [and] maybe he should just rest" before driving home. Thirty minutes later, as she watched television, when felt a hand on her shoulder and turned to see [Petitioner], naked, standing behind her. He then threw her down on the bed, removed her clothing and raped her. Although she screamed and tried to fight him off, she was unable to get away. When he finished, he dressed and left the apartment without saying anything to her.

According to [Petitioner], however, both he and Eileen drank several glasses of wine that night and had achieved "a happy buzz." He eventually passed out on her bed, alone, only to be awakened sometime later by Eileen pressing up against him in the bed. He began "caressing . . . [and] rubbing her," and they proceeded to engage in what he believed was enjoyable sex to her. At some point, as Eileen was saying "go, go, go, go," she opened her eyes and saw him. She then pushed him off and told him to "put your pants on . . . [and] go." According to [Petitioner], she "seemed a little upset." Before leaving, he asked her what time he should pick her up for dinner and the concert, and she just told him to "giver her a call." Although he realized subsequently that Eileen was "mad" and "upset," he did not learn of the accusation until over a week later.

(Ex. I, pp. 2-4).

**B.    Trial**

Based on Eileen's allegations and the ensuing investigation, the state charged

2

Petitioner with kidnaping (Count 1) and sexual assault (Count 2), both class 2 felonies. (*Id.*, p. 4). Prior to trial, Petitioner's counsel field a motion *in limine* to admit, pursuant to A.R.S. § 13-1421, evidence that Eileen had sexual intercourse with her boyfriend, George, after she was allegedly sexually assaulted by Petitioner and before the alleged sexual assault was reported to the police. (Ex. F). Petitioner claimed that, while Eileen was having sexual intercourse with George, he "had to view the hickeys on her neck and therefore she had a motive to allege the sexual assault." (*Id.*, p. 3). The trial court ruled that Petitioner was free to elicit testimony that George saw the hickeys on Eileen's neck, and argue that this provided a motive for Eileen to falsely allege that Petitioner had sexually assaulted her, but that evidence that Eileen engaged in sexual intercourse with George was inadmissible. (Ex. A, p. 2).

Following trial, the jury convicted Petitioner of both counts. (Ex. C, p. 147). The trial court sentenced Petitioner to the presumptive term of 7 years imprisonment on Count 1 (kidnaping), and to a consecutive term of 7 years probation on Count 2 (sexual assault). (Ex. D, p. 11).

### C. Direct Appeal

In his opening brief on direct appeal, dated January 21, 2003, Petitioner raised one issue:

> Just prior to having sexual intercourse with . . . [Eileen] . . . , [Petitioner] gave her two "hickeys" on her neck. [Eileen] did not contact the police to report an alleged sexual assault by [Petitioner] until more than two days after the alleged incident, during which time she had sexual intercourse with her boyfriend, George. Was it error for the trial court to refuse to allow the defense to present evidence of that instance of sexual intercourse between [Eileen] and her boyfriend, when that evidence would have been offered in support of the defense theory that [Eileen] had a motive to fabricate her claim on non-consent?

(Ex. G, p. 1). In raising this claim, Petitioner relied exclusively on Arizona cases, but asserted that the trial court's error "denied him his right to a fair trial as guaranteed under the Fifth, Sixth and Fourteenth Amendment to the Constitution of the United States, and Article

2, Sections 4 and 24 of the Constitution of the State of Arizona." (Ex. G, p. 13).

On July 10, 2003, the Arizona Court of Appeals filed its Memorandum Decision affirming Petitioner's conviction. (Ex. I). In addressing Petitioner's argument, the Court of Appeals exclusively cited Arizona statutory and case law. (*Id*.).

Petitioner filed a petition for review by the Arizona Supreme Court, asserting the same state law evidentiary claim. (Ex. J). In the petition, Petitioner makes no mention of any federal legal theory or authority. (*Id*.). The Supreme Court summarily denied review by order dated January 5, 2004. (Ex. K).

### D. Post-Conviction Relief

On January 29, 2004, Petitioner field a notice of post-conviction relief in the trial court. (Ex. L). On October 1, 2004, Petitioner's counsel filed a petition for post-conviction relief. (Ex. M). Petitioner asserted that his trial counsel, by failing to assert that Eileen and her boyfriend "were intimate," was ineffective in arguing the motion *in limine* seeking to admit evidence that Eileen had sexual intercourse with her boyfriend after Petitioner allegedly sexually assaulted her. (*Id*., pp. 4-5). In support of his claim of ineffective assistance, Petitioner cited both the United States Constitution and federal authority. (*Id*., pp. 4-5). On February 11, 2005, the trial court held an evidentiary hearing on the claim. (Ex. E). On February 17, 2005, the trial court issued a Minute Entry Order finding that counsel was not ineffective and denying Petitioner's petition for post-conviction relief. (Ex. N).

Petitioner petitioned for review by the Arizona Court of Appeals (Ex. O), which denied review without comment (Ex. P). Petitioner then filed *pro se* a petitioner for review by the Arizona Supreme Court. (Ex. Q). The petition was denied by order dated August 17, 2006. (Ex. R).

. . . .

. . . .

. . . .

4

### E. The Pending 2254 Petition

Petitioner subsequently filed the instant habeas petition, which alleges the following bases for relief:

> **Claim I:** Petitioner was denied his right to a fair trial when the court precluded the defense from presenting evidence that the alleged victim had sexual intercourse with her boyfriend the day after the alleged incident, when the purpose for presenting that evidence was to support the theory that the alleged victim had a motive to fabricate the non consent.
>
> **Claim II:** Petitioner received ineffective assistance of counsel in violation of his Sixth Amendment right to competent representation.

*Petition*, pp. 5-10.

## II. LEGAL DISCUSSION

### A. Claim I Is Not Exhausted

A state prisoner must exhaust the available state remedies before a federal court may consider the merits of his habeas corpus petition. *See* 28 U.S.C. § 2254(b)(1)(A); *Nino v. Galaza,* 183 F.3d 1003, 1004 (9th Cir.1999). Exhaustion occurs either when a claim has been fairly presented to the highest state court, *Picard v. Connor*, 404 U.S. 270, 275 (1971), or by establishing that a claim has been procedurally defaulted and that no state remedies remain available, *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Exhaustion requires that a habeas petitioner present the substance of his claims to the state courts in order to give them a "fair opportunity to act" upon these claims. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 844 (1999). A claim has been "fairly presented" if the petitioner has described the operative facts and legal theories on which the claim is based. *Picard v. Connor*, 404 U.S. 270, 277-78 (1971); *Rice v. Wood*, 44 F.3d 1396, 1403 (9th Cir. 1995). The operative facts must be presented in the appropriate context to satisfy the exhaustion requirement. The fair presentation requirement is not satisfied, for example, when a claim is presented in state court in a procedural context in which its merits will not be considered in the absence of special circumstances. *Castille*, 489 U.S. at 351. An exact

1 correlation of the claims in both state and federal court is not required. *Rice v. Wood*, 44 F.3d 1396, 1403 (9th Cir. 1995). The substance of the federal claim must have been fairly presented to the state courts. *Chacon v. Wood*, 36 F.3d 1459, 1467 (9th Cir. 1994) (citations omitted).

A petitioner may also exhaust his claims by either showing that a state court found his claims defaulted on procedural grounds or, if he never presented his claims in any forum, that no state remedies remain available to him. *See Jackson v. Cupp*, 693 F.2d 867, 869 (9th Cir. 1982). "To exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32," *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994), and then present his claims to the Arizona Court of Appeals. *See Swoopes v. Sublett,* 196 F.3d 1008, 1010 (9th Cir. 1999).

In this case, Respondents contend that Petitioner's Claim I, based on the trial court's denial of his motion *in limine*, is not exhausted because he failed to allege a violation of his federal constitutional rights to "due process" or a "fair trial" in his trial court motion or in his brief to the Arizona Court of Appeals. A review of Petitioner's claims at the trial court and in the court of appeals do not entirely support Respondents' contention. As the Respondents contend, Petitioner's motion *in limine* was based solely on A.R.S. § 13-1421, which addresses the admissibility of evidence relating to a victim's prior sexual conduct and makes no mention of "due process" or the right to a "fair trial." (Ex. F, p. 2). However, these rights are invoked in Petitioner's brief submitted to the Arizona Court of Appeals in his direct appeal. There, Petitioner claimed that the trial court's ruling finding the victim's sexual history inadmissible "was error and denied him his right to due process and his right to a fair trial as guaranteed under the Fifth, Sixth and Fourteenth Amendments to the Constit8ion of the United States . . . ." (Ex. G, p. 13). This is the only mention of federal authority in the brief and Petitioner relies solely on state authority to support the ensuing argument. The question, then, is whether the mention of "due process" and "fair trial," accompanied by a

reference to federal constitutional amendments constitutes the fair presentation of his federal claims. It clearly does not.

Petitioner's federal citations in his brief submitted to the Arizona Court of Appeals are in all pertinent respects the type of "scattershot" citation "divorced from any federal legal theory" that the Ninth Circuit found in *Castillo v. McFadden*, 399 F.3d 993, 1003 (9th Cir. 2005), to be insufficient to satisfy the "fair presentation" requirement. In fact, Petitioner has provided even less federal authority in the Arizona Court of Appeals than did Castillo. *Castillo*, 399 F.3d at 1000-1002 (describing two sections of Castillo's brief where general citations to the United States Constitution and the Bill of Rights were provided). As the Ninth Circuit explained in *Castillo*, a petitioner cannot "raise Arizona evidentiary claims, cite cases dealing with the admission of evidence, mention the words "fair trial" and then reasonably expect the Arizona Court of Appeals to understand that he is complaining of anything other than evidentiary errors." *Id.* at 1002.

Petitioner's case is entirely consistent with *Castillo*. He offered nothing by way of citation or argument to alert the Court of Appeals of a federal aspect of his claim. The conclusion is further borne out by the fact that the Court of Appeals resolved the claim based entirely on Arizona authority without so much as a mention of federal law. (Ex. I, pp. 7-10). Thus, Petitioner failed to exhaust Claim I by fairly presenting it to the Arizona courts as a claim based on federal law. *See Picard*, 404 U.S. at 276-78.

Moreover, as Respondents contend and Petitioner does not contradict, Petitioner is procedurally barred from now raising these claims in State court. *See* Ariz.R.Crim.P. 32.2(a)(3) ("A defendant shall be precluded from relief under [Rule 32] based upon any ground . . . [t]hat has been waived at trial, on appeal, or in any previous collateral proceeding.") Because Petitioner did not present any of these claims to the Arizona courts, the claims are procedurally defaulted and barred from federal review. Ariz.R.Crim.P. 32.1, 32.2(a) & (b); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002). As such, the merits of the claims need not be addressed unless Petitioner establishes cause and prejudice or that a

7

fundamental miscarriage of justice has occurred. Petitioner has not attempted to do so, and the Court therefore recommends that Claim I be denied.

**B. Merits**

Under the AEDPA, a federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings" unless the state decision was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). *See Williams v. Taylor*, 120 S.Ct. 1495 (2000). A state court's decision can be "contrary to" federal law either (1) if it fails to apply the correct controlling authority, or (2) if it applies the controlling authority to a case involving facts "materially indistinguishable" from those in a controlling case, but nonetheless reaches a different result. *Van Tran v. Lindsey*, 212 F.3d 1143, 1150 (9th Cir. 2000). In determining whether a state court decision is contrary to federal law, the court must examine the last reasoned decision of a state court and the basis of the state court's judgment. *Packer v. Hill*, 277 F.3d 1092, 1101 (9th Cir. 2002). A state court's decision can be an unreasonable application of federal law either (1) if it correctly identifies the governing legal principle but applies it to a new set of facts in a way that is objectively unreasonable, or (2) if it extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Hernandez v. Small*, 282 F.3d 1132 (9th Cir. 2002).

**1. Claim II: Ineffective Assistance of Counsel**

Petitioner asserts that his counsel was ineffective because he failed to fully investigate and more forcefully argue for the admissibility of evidence that Eileen "had sex with her boyfriend after she was purportedly raped the night before by Petitioner." The operative legal standard applicable to this claim is a familiar one, addressed by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). The standards enunciated there by the Court are applied unless there is other Supreme Court precedent directly on

point. *See Wright v. Van Patten*, 128 S.Ct. 743, 746 (2008). Under *Strickland*, a petitioner must show both deficient performance and prejudice in order to establish that counsel's representation was ineffective. 466 U.S. at 687. In the context of habeas claims evaluated under § 2254(d)(1) standards, the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable– a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

Applying these standards, the Court concludes that the Arizona court's decision denying Petitioner relief did not violate clearly established federal law. As the Arizona Court of Appeals denied review without comment (Ex. P), the only reasoned decision on this claim is from the trial court. In its denial of Petitioner's Rule 32 petition, the trial court found that:

> 1. The arguments brought forth by [Petitioner] do not change this Court's view that the fact that the victim had consensual sexual relations with her boyfriend after the date defendant committed his offense is not relevant in this case.
>
> 2. At trial, defense counsel addressed the issue of whether the victim had a motive for falsely accusing the [Petitioner], the [Petitioner] was permitted to present all relevant circumstances allegedly supporting this claim, to the jury.
>
> 3. To the extent the victim's subsequent sexual relations with her boyfriend is even marginally relevant, this relevance is more than outweighed by the potential prejudice that Arizona law recognizes arises by inserting evidence of consensual intimacy in a trial concerned with a violent act.
>
> 4. The [Petitioner] has failed to carry his burden of establishing that he received ineffective assistance of counsel. Even if all the [Petitioner's] claims are taken as true, his counsel's performance was not deficient to the extent that [Petitioner] was prejudiced and the outcome of his trial undermined. The evidence presented, especially the admissions made by the [Petitioner] during a confrontation call with the victim, coupled with the fact that at least one juror question showed that the jury considered issues relating to the victim's veracity and her relationship with her boyfriend and the [Petitioner], establish [Petitioner] received a fair trial.

(Ex. N, pp. 1-2).

Petitioner does not clearly explain the theory underlying this claim. As the trial court noted: "At trial, defense counsel addressed the issue of whether the victim had a motive for falsely accusing the [Petitioner], the [Petitioner] was permitted to present all relevant circumstances allegedly supporting this claim, to the jury." (*Id.*). As his counsel sought to introduce the evidence of the victim's intimacy with her boyfriend, he cannot be faulted for failing to do so. Petitioner nevertheless asserts that his counsel was deficient because he "failed to re-raise [the] argument or to raise the issue in the context of the absence of physical evidence of the rape." *Petition*, pp. 9-10.

The Court, however, cannot discern, and Petitioner has not explained, why or how this purported failure prejudiced Petitioner's case. Why, for instance, if Petitioner's counsel would have re-raised the issue, would the trial court have changed its decision not to allow evidence of the victim's intimacy with her boyfriend? On direct appeal, the Arizona Court of Appeals rejected Petitioner's claim that the trial court's ruling on the issue was in error. (Ex. I, pp. 8-10). Logically, as the Court of Appeals concluded, "Eileen's motive to lie about her relations with [Petitioner] in order to explain away the marks would have been present regardless of whether she also had sex with [her boyfriend]." (*Id.*, p. 9). Moreover, in rejecting the claim, the Court of Appeals agreed with the trial court that Petitioner's "argument could easily be made to the jury without alluding to the fact that she subsequently had sex with her boyfriend." (*Id.*, p. 10). Based on this record, Petitioner cannot show deficient performance by his counsel or that he suffered prejudice under *Strickland*.

Where a petitioner seeking relief on his ineffective assistance of counsel claim cannot demonstrate prejudice even if his allegations are proved, he is not entitled to relief. *Williams v. Calderon,* 52 F.3d 1465, 1484 (9th Cir.1995). As such, the Court does not find the State courts' determinations on this issue unreasonable.

## III. RECOMMENDATION

For all of the above reasons, **THE MAGISTRATE JUDGE RECOMMENDS** that the District Court, after its independent review, **DISMISS WITH PREJUDICE** Petitioner's

1 | Petition for Writ of Habeas Corpus [Doc. 1].

2 | This Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

However, the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the District Court. *See* 28 U.S.C. § 636(b)(1) and Rules 72(b) and 6(a) of the Federal Rules of Civil Procedure. Thereafter, the parties have ten (10) days within which to file a response to the objections. If any objections are filed, this action should be designated case number: **CV 07-363-PHX-DGC**. Failure to timely file objections to any factual or legal determination of the Magistrate Judge may be considered a waiver of a party's right to *de novo* consideration of the issues. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*).

DATED this 7th day of October, 2009.

Jacqueline Marshall
United States Magistrate Judge